## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

TERRY MCDANIEL and VANESSA
COWAN,

        Plaintiffs,

vs.                                                                          No. CIV 14-0511 JB/SCY

FRANCISCO JAVIER MENDEZ LOYA d/b/a
TRANSLOGISTICA MENLO; ARMANDO
GAYTAN SAUCEDO; RED ROCK RISK
RETENTION GROUP, INC. and TERRY
MCDANIEL,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Remand to State Court, filed

August 15, 2014 (Doc. 20)("Motion to Remand").  The Court held a hearing on November 18,

2014.   The primary issues are: (i) whether Defendant Armando Gaytan Saucedo is a New

Mexico citizen, thus destroying diversity and necessitating remand; (ii) whether Plaintiff

Vanessa Cowan has alleged any cross-claims against Plaintiff-Defendant Terry McDaniel; and

(iii) whether these cross-claims would destroy the Court's diversity jurisdiction, given that

McDaniel and Cowan are both New Mexico citizens.  The Court concludes that: (i) Saucedo is a

Mexican citizen and not a New Mexico citizen; (ii) Cowan has not, in the Complaint for

Declaratory Judgment and Damages, filed in state court November 8, 2013, filed in federal court

May 28, 2014 (Doc. 1-1)("Complaint"), alleged any claims against McDaniel; and (iii) even if

Cowan had asserted claims against McDaniel, these claims would be cross-claims, and

nondiverse cross-claims do not destroy federal diversity jurisdiction.  The Court thus concludes

that it has diversity jurisdiction over this case and denies the Motion to Remand without prejudice to renew it at a later date.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint, as it must at the motion-to-dismiss stage. Around midnight on November 9, 2010, McDaniel was driving a tractor trailer in the southbound lane of Interstate 25 in New Mexico.  See Complaint ¶ 11-13, at 2.[1]  Cowan was with McDaniel in the cab of McDaniel's tractor trailer.  Saucedo was also driving a tractor trailer southbound on Interstate 25, and the two tractor trailers collided, causing serious injuries to Cowan and McDaniel.  See Complaint ¶¶ 11-13, at 2; id. ¶¶ 20-21, at 3.  The investigating police officer that examined the collision found McDaniel's "driver inattention" at fault for the accident, but the Complaint alleges that Saucedo "negligen[tly,] . . . reckless[ly,] . . . intentional[ly], willful[ly], wanton[ly, and] malicious[ly]" caused the wreck.  Complaint ¶¶ 19, 22, at 3.  Saucedo is personally uninsured and operates his tractor trailer as an employee of Defendant Francisco Javier Mendez Loya.  See Complaint ¶ 9, at 2; id. ¶¶ 14-16, at 2-3.  Defendant Red Rock Risk Retention Group, Inc. ("Red Rock") insured the truck that Saucedo was driving at the time of the accident; the policy limit is $1,000,000.00.  Complaint ¶ 17, at 3.

## PROCEDURAL BACKGROUND

The Plaintiffs filed their suit in state court, and the Defendants removed on diversity grounds.  See Complaint at 1; Notice of Removal of Action Under 28 U.S.C. § 1441(b) (Diversity), filed May 28, 2014 (Doc. 1)("Notice of Removal").  After setting forth the facts, the

---

[1]The Complaint's internal pagination is consistently one page number higher than CM/ECF's pagination.  The Court will cite to the Complaint's internal pagination -- the black number at the bottom center of the page -- and not to CM/ECF's pagination -- the blue number at the top right of the page.

Complaint alleges three claims: (i) a "personal injury" claim, which appears to be intended to encompass both negligence and intentional torts -- this claim is brought by the "Plaintiffs" against Saucedo and Loya; (ii) a "declaratory judgment" claim, in which the Plaintiffs ask the Court to declare that Saucedo is an uninsured motorist under New Mexico law; and (iii) a claim for uninsured motorist benefits, which the Plaintiffs assert against Red Rock.  Complaint ¶¶ 28-42, at 4-5.  Although the Complaint does not allege any claims against McDaniel in the claims section, it lists his name as both a plaintiff and a defendant in the caption, and contains the following statements at the end of the factual section and before the claims section:

> 23.    Plaintiff Cowan alleges no specific claims against Defendant McDaniel, because Plaintiff Cowan does not believe Defendant McDaniel was negligent.

> 24.    Nevertheless, the investigating police officer attributed fault to Defendant McDaniel in a notation attributing "driver inattention" to Defendant McDaniel.

> 25.    In addition, Defendant Saucedo attributed fault to Defendant McDaniel in his statement to the investigating police officer.

> 26.    Based on the notation and statement described in the police report, Plaintiff Cowan may ultimately have colorable claims for negligence against Defendant McDaniel.

> 27.    Because Plaintiff Cowan may have colorable claims for negligence against Defendant McDaniel, Defendant McDaniel is a properly named defendant in this action.

Complaint ¶¶ 23-27, at 3 (citations omitted).  The Complaint also alleges that McDaniel and Cowan are New Mexico citizens, that Loya and Saucedo are Mexico citizens, and that Red Rock is an "out-of-state insurer."  Complaint ¶¶ 1-2, at 1; id. ¶¶ 6-8, at 2.

The Plaintiffs filed their Motion to Remand, along with a supporting memorandum brief, on August 15, 2014, slightly less than three months after removal.  See Memorandum Brief in Support of Plaintiff Cowan's Motion to Remand to State Court, filed August 15, 2014

(Doc. 21)("Remand Memo."). The Plaintiffs argue for remand on two grounds. First, they contend that this action is not diverse, because Saucedo is a New Mexico citizen. <u>See</u> Remand Memo. at 5-6. This contention differs from the one in the Complaint. <u>See</u> Complaint ¶ 6, at 2 ("Upon information and belief, Defendant Saucedo is a resident of Juarez, Mexico."). Their sole evidence for this contention is that Loya served a third-party complaint on Saucedo at a home -- at which Saucedo apparently resides or at least stays -- in Anthony, New Mexico. <u>See</u> Remand Memo. at 6.

Second, the Plaintiffs argue that, even if Saucedo is not a New Mexico citizen, McDaniel is a New Mexico citizen, and he is both a Plaintiff and a Defendant. <u>See</u> Remand Memo. at 5. They preemptively address the Defendants' counterargument, which is that the Workers' Compensation Act, N.M. Stat. Ann. § 52-1-1 to -70, would preclude recovery by Cowan against McDaniel, because McDaniel and Cowan are co-workers, and Cowan was injured on the job. <u>See</u> Remand Memo. at 5. They argue that, for the Court to conclude that diversity fails on this ground would require "the Court to enter a <u>factual</u> finding that Plaintiff Cowan was a 'co-employee' of Defendant McDaniel at the time of her injury, even though she was off the clock, and indeed she was sound asleep at the time of the crash." Remand Memo. at 5 (emphasis in original). The Plaintiffs contend that the standard for concluding that McDaniel was fraudulently joined as a Defendant is higher than even the standard for dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> Remand Memo. at 2-4.

Red Rock responded to the Motion to Remand. <u>See</u> Red Rock Risk Retention Group Inc.'s Response to Plaintiff Cowan's Motion to Remand to State Court, filed September 2, 2014 (Doc. 22)("Response"). It first counters the Plaintiffs' contention that Saucedo is a New Mexico citizen, asserting that (i) the accident report from the wreck, which the Plaintiffs attached to the

Complaint, lists an address in Juarez, Mexico for Saucedo; (ii) the report states that Saucedo has a Mexican driver's license, and the space for his United States social security number is left blank; (iii) Red Rock inquired with the Dona Ana County Assessor's Office and determined that Saucedo does not own the Anthony address at which he was served; and (iv) a search of the New Mexico Secretary of State reveals that he is not registered to vote in New Mexico. See Response at 2. Red Rock attaches exhibits attesting to (iii) and (iv). See Assessor's Office Search and Secretary of State Search, filed September 2, 2014 (Doc. 22-1). Red Rock asserts that it asked the United States Citizenship and Immigration Services about Saucedo's citizenship status, but that the agency refused to give Red Rock that information without authorization from Saucedo. See Response at 2.

Red Rock also contends that McDaniel was fraudulently joined as a defendant, because the Plaintiffs have no chance of going forward with the claim as it currently exists in the Complaint. See Response at 3. It argues that the "Plaintiff[s] do[] not deny that [the] Complaint fails to make a claim against McDaniel," and contends that this fact, "in and of itself, establishes fraudulent joinder." Response at 3 (citing Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450 (10th Cir. 1983)). Red Rock contends that the Complaint cannot possibly pass rule 11 scrutiny, given the Complaint's admission that neither Cowan nor McDaniel subjectively believes that McDaniel was negligent or at fault in any way. See Response at 4.

The Court held a hearing on November 18, 2014. See Transcript of Hearing (taken November 18, 2014)("Tr.").[2] The Plaintiffs largely reiterated the arguments in their briefing, and called the Court's attention to Rodriguez v. Marchman, No. CIV 06-0228 JH/LFG (D.N.M.

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

Aug. 24, 2006)(Doc. 17)(Herrera, J.),[3] a case in which a family was in an auto accident, and each member of the family, including the driver, sued the other car's driver, and all family members except the driver sued the driver for negligence.  See Tr. at 3:7-4:2 (Thompson).  In that case, the Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, ruled that the driver was both a plaintiff and a defendant, and that his citizenship -- which was the same as the other members of his family, but diverse from the other defendants -- sufficed to defeat diversity.  See Tr. at 3:7-4:2 (Thompson).

The Court asked the Plaintiffs why this case was different from an ordinary comparative negligence case.  See Tr. at 4:3-13 (Court).  The Court noted that any negligence by McDaniel would decrease Cowan's recovery from Saucedo, Loya, and Red Rock, but that this situation does not necessarily entail a claim by Cowan against McDaniel.  See Tr. at 5:5-12 (Court).  The Plaintiffs responded that the situation is different when comparative fault is found with a co-defendant versus when it is found with an "empty chair."  Tr. at 5:19-6:12 (Thompson).  They noted that, from a plaintiff's perspective, comparative fault with an empty chair results in a loss of total recovery, whereas comparative fault with a co-defendant results in the plaintiff still recovering the same damages as if there were no comparative fault.  See Tr. at 6:8-12 (Thompson).  The Plaintiffs contend that this strategy of a passenger naming her driver as both a co-plaintiff and a co-defendant makes sense if the driver has uninsured motorist coverage and the other car's driver is uninsured.  See Tr. at 7:16-8:1 (Thompson).

The Court also asked Bruce Thompson, the Plaintiffs' counsel at the hearing, who he represented, given that representing both Cowan and McDaniel would seem to present a conflict

---

[3]The Court cannot locate this opinion on Westlaw or Lexis, but it has obtained a copy from CM/ECF.  The Plaintiffs also provided a copy to the Court at the hearing.

of interest if Cowan has a claim against McDaniel.  See Tr. at 4:18-20 (Court).  Mr. Thompson responded that he represented both Cowan and McDaniel at this stage of the proceedings, but that, as discovery progresses and the parties ascertain whether a claim against McDaniel exists, McDaniel might have to retain his own counsel.  See Tr. at 9:5-10:2 (Thompson).  He asserted, however, that, at this stage, no party has yet taken discovery, no one has yet located Saucedo "to any . . . reasonable degree," and thus Cowan's and McDaniel's interests are not adverse to one another.  Tr. at 9:5-10:2 (Thompson).

The Court asked whether the Complaint stated a claim against McDaniel, or, rather, whether Cowan's and McDaniel's adversity "is just theoretical" at this point.  Tr. at 10:6-12 (Court).  The Plaintiffs responded that the Complaint asserts a claim against McDaniel in the alternative.  See Tr. at 10:13-11:3 (Thompson).  The Plaintiffs stated that "Cowan did plead in her Complaint that she subjectively does not believe Terry McDaniel was negligent, but . . . [t]he subjective believe of the claimant does not preclude pleading in the alternative."  Tr. at 10:18-25 (Thompson).

The Plaintiffs referred the Court to Montano v. Allstate Indemnity, 211 F.3d 1278 (10th Cir. 2000)(unpublished), a case which the Plaintiffs said stands for the proposition that, even "where a claim is dismissed or should be dismissed under 12(b)(6), . . . [the case sometimes] should nevertheless be remanded as a matter of jurisdiction."  Tr. at 11:4-24 (Thompson).  The Plaintiffs contend that if the Court needs to go into "an intricate analysis of state law," then the claim "is not so wholly insubstantial and frivolous" as to constitute fraudulent joinder.  Tr. at 11:4-24 (Thompson).

Red Rock then put on its argument, contending that "possibilities can't defeat jurisdiction.  Claims do.  And in this case, there are no claims against McDaniel."  Tr. at 13:17-

20 (Thomas).  Red Rock noted that the three counts that the Complaint alleges are against specific Defendants, and in no count is McDaniel one of those Defendants.  See Tr. at 13:20-14:8 (Thomas).  See also Tr. at 14:23-25 (Thomas)("Because there's simply no claim against him, identifying Terry McDaniel in the defendant column is meaningless.").  Red Rock asserted that, even in Rodriguez v. Marchman, Judge Herrera's case upon which the Plaintiffs rely, one of the counts in that complaint "could reasonably be interpreted to include a claim of negligence against" the plaintiff-defendant.  Tr. at 14:14-18 (Thomas).

The Court asked Red Rock what should happen if the Plaintiffs amended their Complaint to state a claim against McDaniel.  See Tr. at 15:1-9 (Court).  Red Rock responded that it did not know for sure how that should be handled, but that its understanding is that "jurisdiction is considered at the time of removal."  Tr. at 15:10-13 (Thomas).  It acknowledged that "[i]t's possible" that remand might be appropriate in that circumstance, but that, "at this juncture, that is not something -- that's not a claim that exists."  Tr. at 15:24-16:1 (Thomas).  Red Rock also expressed skepticism that the Plaintiffs could properly amend their Complaint at this point, arguing that Mr. Thompson's joint representation and the Workmen's Compensation Act would both bar the addition of a claim against McDaniel.  See Tr. at 16:1-19 (Thomas).

The parties briefly turned to the issue of Saucedo's citizenship, with the Court first clarifying that, if Saucedo is a Mexican citizen, it would have diversity jurisdiction over the case. See Tr. 21:23-22:1 (Court).  Red Rock responded that, under 28 U.S.C. § 1332(a), the Court would indeed have diversity jurisdiction over a case between a citizen and a foreign national the same as it would over a case between a New Mexico citizen and a citizen of another state.  See Tr. at 22:2-18 (Thomas).  Red Rock asserted that Saucedo was no longer reachable at the Anthony address at which he was earlier served and that subsequent correspondence sent to him

at that address was returned undeliverable.  See Tr. at 23:7-11 (Thomas).  Red Rock thus asked the Court to deny the Motion to Remand without prejudice and argued that, if evidence later established that Saucedo is a New Mexico citizen, the Court could remand the case at that point. See Tr. at 24:15-25:8 (Thomas).

## LAW REGARDING REMOVAL, REMAND, FRAUDULENT JOINDER, PROCEDURAL MISJOINDER, AND BAD FAITH

If a civil action filed in state court satisfies the requirements for original federal jurisdiction -- meaning, most commonly, federal-question or diversity jurisdiction -- the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings LP, 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. at 68).  In a case with multiple defendants, there must be unanimous consent to removal; any one defendant may spoil removal and keep the case in state court.  See 28 U.S.C. § 1446(b)(2)(A).  Only true defendants have removal rights: plaintiffs defending counterclaims and third-party defendants may not remove an action,[4] and their consent

---

[4]This view is well-established with regard to plaintiffs defending counterclaims, but is an open question in the Tenth Circuit with regard to third-party plaintiffs.  The better view, and the majority view, however, is that "defendants" as used in the removal statute refers to true defendants and not to third-party defendants.  As the Court wrote in Wiatt v. State Farm Insurance Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.),

> [w]ith respect to third-party defendants, courts take various views on whether they may remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d 1237, 1239 (D. Colo. 2006)(citing Monmouth-Ocean Collection Serv., Inc. v. Klor, 46 F. Supp. 2d 385 (D.N.J. 1999)).  28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants."  The majority view is

that third-party defendants are not "defendants" within the meaning of § 1441(a). See First Nat. Bank of Pulaski v. Curry, 301 F.3d 456, 461-62 (6th Cir. 2002); James Wm. Moore, Moore's Federal Practice § 107.11[1][b][iv] ("[T]hird-party defendants are not *defendants* within the meaning of the removal statute." (emphasis in original)).   Other justifications for opposing third-party defendant removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal.   See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239.   Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum.

. . . .

Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases.   See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. CIV 92-4104, 1992 WL 373927, at *1-2 (D. Kan. Nov. 23, 1992); Radio Shack Franchise Dep't v. Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim).   These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b).   Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant -- a party antagonistic to the plaintiff.   See Moore, supra, § 107.11 [1][b][iv] ("The better view . . . is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove.").   At least one court, however, has held that a third-party defendant a plaintiff/counter-defendant impleads cannot remove, because the third-party defendant is not a defendant within the meaning of § 1441.   See Garnas v. Am. Farm Equip. Co., 502 F. Supp. 349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-party removal.   See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240.   It is therefore an open question in this circuit whether a third-party defendant, who the plaintiff impleaded, may remove a case.

560 F. Supp. 2d at 1076 (citations omitted).   The Court ultimately concluded that it "need not resolve this issue, because assuming, without deciding, that a third-party defendant impleaded

is not required for removal if all the true defendants consent.  See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642 (2d Cir. 1993); Wiatt v. State Farm Ins. Co., 560 F. Supp. 2d 1068 (D.N.M. 2007)(Browning, J.).

 To remove a case based on diversity, the diverse defendant must demonstrate that all of the usual prerequisites of diversity jurisdiction are satisfied.  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).  In addition to the requirements of original jurisdiction, § 1441(b)(2) lays out the "forum-defendant rule," which provides that a case may not be removed on the basis of diversity jurisdiction if any defendant is a citizen of the state in which the state-court action was brought.  Brazell v. Waite, 525 F. App'x 878, 884 (10th Cir. 2013)(unpublished)("[W]e note that § 1441(b)(2) -- the so-called forum-defendant rule -- provides as a separate requirement that '[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" (alteration in original)(quoting 28 U.S.C. § 1441(b)(2))).  The forum-defendant rule applies only to cases removed under diversity jurisdiction; a defendant may remove a case brought against it in its home state on the basis of federal-question jurisdiction.  See 28 U.S.C. § 1441(b).  Last, a case cannot be removed if it began with a nondiverse party or forum-citizen defendant and only

---

under rule 14(b) may attempt removal, Allstate has not met its burden to establish the Court's diversity jurisdiction over the claims against it."  560 F. Supp. 2d at 1078.

later came to satisfy the requirements of removal jurisdiction, unless: (i) the plaintiff voluntarily dismissed the removal-spoiling party, see DeBry v. Transamerica Corp., 601 F.2d 480, 488 (10th Cir. 1979); Flores-Duenas v. Briones, No. CIV 0660 JB/CG, 2013 WL 6503537, at *12 n.6, *26 (D.N.M. Dec. 1, 2013)(Browning, J.)(describing the operation of the "voluntary-involuntary" rule);[5] or (ii) the removal-spoiling party was fraudulently joined or procedurally misjoined -- doctrines described below.

## 1.   The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome.   See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333; Martin v. Franklin Capital Corp., 251 F.3d at 1290; Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").   The defendant seeking removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence."   McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008).   See Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").   Because federal courts are courts of limited jurisdiction, the Tenth Circuit has ruled that "courts must deny such

---

[5]The Tenth Circuit explained:

> The general effect of the [voluntary-involuntary] test is that a cause cannot be removed where the removability is a result of some development other than a voluntary act of plaintiff.  The cause cannot be removed as a result of evidence from the defendant or the result of a court order rendered on the merits of the case.

DeBry v. Transamerica Corp., 601 F.2d at 488 (citation omitted).

jurisdiction if not affirmatively apparent on the record." <u>Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.</u>, 149 F. App'x 775, 778 (10th Cir. 2005)(unpublished).  On the other hand, this strict construction and presumption against removal should not be interpreted as a hostility toward removal cases in the federal courts.  <u>See</u> <u>McEntire v. Kmart Corp.</u>, No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *2 (D.N.M. Feb. 9, 2010)(Browning, J.)(citing <u>Bonadeo v. Lujan</u>, 2009 WL 1324119, at *12 ("Strict construction does not mean judicial hostility toward removal.  Congress provided for removal, and courts should not create rules that are at tension with the statute's language in the name of strict construction.")).

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." <u>Pritchett v. Office Depot, Inc.</u>, 420 F.3d 1090, 1095 (10th Cir. 2005)(citing <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-09 (1941); <u>United States ex rel. King v. Hillcrest Health Ctr.</u>, 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal." <u>Fajen v. Found. Reserve Ins. Co.</u>, 683 F.2d 331, 333 (10th Cir. 1982).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." <u>Montoya v. Chao</u>, 296 F.3d 952, 955 (10th Cir. 2002).

## 2.      **Procedural Requirements of Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." <u>Thompson v. Intel Corp.</u>, 2012 WL 3860748, at *5.  A removal which does not comply with the express statutory requirements is defective and must be remanded to state court. <u>See</u> <u>Huffman v. Saul Holdings LP</u>, 194 F.3d at 1077.  <u>See also</u> <u>Chavez v. Kincaid</u>, 15 F. Supp.

2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b).  The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist."  Akin v. Ashland Chem. Co., 156 F.3d at 1036.[6]

After the notice of removal is filed, all state-court proceedings are automatically stayed, and the other defendants in the case -- if not all defendants joined in the removal -- have thirty days to consent to the removal of the action.  See 28 U.S.C. § 1446(b)(2).  "When a civil action is removed solely under section 1441(a) [the standard removal statute, which excludes multiparty, multiforum jurisdiction], all defendants who have been properly joined and served

---

[6]Congress recently clarified removal jurisdiction and procedures in the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 758.  See Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *12 n.5 (D.N.M. Aug. 27, 2012)(Browning, J.)(discussing the Act).

must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).  The failure of all defendants to consent to removal will result in remand.  The rule of unanimity applies to all defendants, whether they are required parties under rule 19 or merely proper parties under rule 20.  Defendants who have not been served, however, need not join in removal.  See Kiro v. Moore, 229 F.R.D. 228, 230-32 (D.N.M. 2005)(Browning, J.).

Section 1447(c) permits the district court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  The Supreme Court of the United States has stated:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005).  The Tenth Circuit has limited district courts' discretion to impose costs and fees to those cases in which the removal was objectively unreasonable.  See Garret v. Cook, 652 F.3d 1249, 1254 (10th Cir. 2011)("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.").

### 3.    Fraudulent Joinder.

A defendant may remove a case to federal court based upon diversity jurisdiction in the absence of complete diversity if a plaintiff joins a nondiverse party fraudulently to defeat federal jurisdiction.  See Am. Nat'l Bank & Trust Co. v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991); Hernandez v. Menlo Logistics, Inc., No. CIV 12-0907 JB/WPL, 2013 WL 5934411, at 14-17 (D.N.M. Sept. 30, 2013)(Browning, J.).  A defendant may remove on the basis of fraudulent joinder either while the nondiverse party is still joined or after it is dismissed from the

case -- the doctrine can thus function as an exception to either complete diversity or the voluntary-involuntary rule. "'[A] fraudulent joinder analysis [is] a jurisdictional inquiry,'" Bio-Tec Envtl., LLC v. Adams, 792 F. Supp. 2d at 1214 (quoting Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004)), and, thus, the Tenth Circuit instructs that the district court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available," Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted). "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent." Baeza v. Tibbetts, No. CIV 06-0407 MV/WPL, 2006 WL 2863486, at *3 (D.N.M. July 7, 2006)(Vazquez, J.). The Supreme Court has stated: "Merely to traverse the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914). The Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished).

The party asserting fraudulent joinder bears the burden of proof. See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(unpublished)("The case law places a heavy burden on the party asserting fraudulent joinder."). "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with

particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.).   Before 2013, the most recent published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years earlier in Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879 (10th Cir. 1967).  The Tenth Circuit said that fraudulent joinder must be "established with complete certainty upon undisputed evidence." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.

Actual fraud -- e.g., a plaintiff colluding with a nondiverse defendant to defeat removal[7] -- suffices to establish fraudulent joinder, but it is not required.  See McLeod v. Cities Serv. Gas Co., 233 F.2d 242, 246 (10th Cir. 1956)("[C]ollusion in joining a resident defendant for the sole purpose of preventing removal . . . may be shown by any means available.").   In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit stated two other bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is a patent sham"; or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)).  In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the Tenth Circuit found fraudulent joinder because the joined party's non-liability was "established with complete certainty upon undisputed evidence."  378 F.2d at 882.  "This does not mean that the federal court will pre-try,

---

[7]Collusion might look something like this: a plaintiff names a nondiverse defendant under a highly dubious theory of liability; the plaintiff contacts the defendant and offers to dismiss the case at the end of the one-year limitation, see 28 U.S.C. § 1446(c), if the defendant agrees not to move to dismiss before the one-year mark; and the defendant agrees to the arrangement to save litigation costs, as well as to avoid any slim chance that the court decides to recognize the plaintiff's theory of liability against it.

as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  Smoot v. Chi., Rock Island & Pac. R.R. Co., 378 F.2d at 882.  In Smoot v. Chicago, Rock Island & Pacific Railroad Co., the plaintiff died when his car collided with a freight train.  See 378 F.2d at 881.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant.  See 378 F.2d at 881. It was undisputed that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him."  378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted different articulations of the burden of proof for fraudulent joinder, two of which are from the United States Court of Appeals for the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which states:

> To prove their allegation of fraudulent joinder [the removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (alteration in original)(quoting Hart v. Bayer Corp., 199 F.3d at 246)(internal quotation marks omitted).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm

- 18 -

Insurance Co., 977 F.2d 848 (3d Cir. 1992), which states: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharmaceuticals, Inc., the Tenth Circuit adopted a different articulation of the burden of proof. The Tenth Circuit stated that, where fraudulent joinder is asserted, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)). The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." 203 F. App'x at 913.

The Fifth Circuit recognized the inconsistencies in various articulations of the standard for fraudulent joinder and directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003):

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard. The test has been stated by this court in various terms, even within the same opinion. For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999),] opinion states,
>
> > To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court.
>
> 181 F.3d at 699 (emphasis added)(citing Burden v. Gen. Dynamics Corp., 60 F.3d 213, 317 (5th Cir. 1995)). The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court." 181 F.3d at 699 (emphasis added). Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must

demonstrate . . . the *absence of any possibility* that the opposing party has stated a claim under state law."   16 <u>Moore's Federal Practice</u> § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."   Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

326 F.3d at 647 (emphases  in original).  The Fifth Circuit has settled upon this phrasing:

[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

<u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").

In <u>Zufelt v. Isuzu Motors America, LCC</u>, 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court addressed the standard courts should use when addressing fraudulent joinder and concluded that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.  727 F. Supp. 2d at 1124-25 (citing <u>Montano v. Allstate Indem. Co.</u>, 211 F.3d 1278, 2000 WL 525592, at *4-5).  The Court explained:

[T]his District has consistently adopted the "possibility" standard when assessing fraudulent joinder claims.  <u>See</u> <u>Allen v. Allstate Ins. Co.</u>, No. CIV 08-0733, 2008 WL 6045497 (D.N.M. Oct. 31, 2008)(Browning, J.)(holding that the claims asserted against the non-diverse defendant were "possibly viable under New Mexico law, and . . . sufficient to preclude federal jurisdiction"); <u>Baeza v. Tibbetts</u>, 2006 U.S. Dist. LEXIS 95317, at *11, 2006 WL 2863486 (stating that "[r]emand is required if any one of the claims against [the defendant] is possibly viable"); <u>Provencio v. Mendez</u>, No. CIV 05-623, 2005 U.S. Dist. LEXIS 39012, at *25, 2005 WL 3662957 (D.N.M. Sept. 29, 2005)(Browning, J.)(stating that "there must be no possibility the [p]laintiffs have a claim against [the non-diverse

defendant]"); Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (stating that, to defeat removal jurisdiction, "[t]he plaintiff need only demonstrate the possibility of the right to relief"). This Court, in Couch v. Astec Indus., Inc., noted with approval the language of the United States Court of Appeals for the Eleventh Circuit, which states that "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Couch v. Astec Indus., Inc., 71 F. Supp. 2d at 1147 (quoting Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998))(emphasis in original).

Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d at 1229.

In Brazell v. Waite, the Tenth Circuit stated that the "removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined defendant," but it did not further elaborate on that burden. 2013 WL 2398893, at *3 (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82, 85 (10th Cir. 1964); Roe v. Gen. Am. Life Ins. Co., 712 F.2d 450, 452 n.* (10th Cir. 1983)).

In 2013, the Tenth Circuit published its first opinion since 1946 regarding the burden of proof for demonstrating fraudulent joinder: "'To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" Dutcher v. Matheson, 733 F.3d 980, 988 (10th Cir. 2013)(Briscoe, C.J., joined by Seymour & Bacharach, J.J.)(quoting Cuevas v. BAC Home Loans Servicing, LP, 648 F.3d 242, 249 (5th Cir. 2011)). In Dutcher v. Matheson, the Tenth Circuit reviewed a district court's holding that it had diversity jurisdiction over a case where Utah citizens sued ReconTrust, a Texas-based national bank, Stuart T. Matheson, a Utah citizen, and Matheson's law firm. See Dutcher v. Matheson, 733 F.3d at 983, 987. The plaintiffs alleged that Matheson and his law firm enabled ReconTrust to conduct an illegal nonjudicial foreclosure by holding the foreclosure sales on behalf of the Texas-based bank. See 733 F.3d at 983. The defendants removed the case to federal court and

alleged that the plaintiffs fraudulently joined the Utah defendants.  <u>See</u> 733 F.3d at 983.  The

district court agreed, finding that, under Utah law, "an attorney cannot be held liable to a non-

client absent fraud, collusion or privity of contract."   733 F.3d at 988.   The Tenth Circuit

disagreed with that characterization of Utah law, finding instead that, in the case on which the

defendants relied, the Utah Supreme Court "has simply limited the circumstances in which a

lawyer owes a duty of care to non-clients from actions arising out of the provision of legal

services." 733 F.3d at 988.  In rejecting the claim of fraudulent joinder, the Tenth Circuit said

> that does not mean that the plaintiffs have stated a valid claim against Matheson
> and his law firm.  Or even that Matheson and his law firm are not somehow
> fraudulently joined.  But the defendants needed to clear a high hurdle to prove
> something they have yet to prove, <u>i.e.</u>, fraudulent joinder.

733 F.3d at 989.

The Tenth Circuit did not elaborate on the defendant's burden to show fraudulent joinder,

except to say that it is "a high hurdle."  733 F.3d at 989.  It quoted, however, <u>Cuevas v. BAC</u>

<u>Home Loans Servicing, LP</u>, a Fifth Circuit opinion that repeats the clarified standard from the

<u>Smallwood v. Illinois Central Railroad Co.</u> case.   See <u>Dutcher v. Matheson</u>, 733 F.3d at 988

(10th Cir. 2013)(quoting <u>Cuevas v. BAC Home Loans Servicing, LP</u>, 648 F.3d 242, 249 (5th Cir.

2011)).

> Under the second way, the test is "whether the defendant has demonstrated
> that there is no possibility of recovery by the plaintiff against an in-state
> defendant, which stated differently means that there is no reasonable basis for the
> district court to predict that the plaintiff might be able to recover against an in-
> state defendant."  [<u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d at 573.]  If there is
> no reasonable basis of recovery, then the court can conclude that the plaintiff's
> decision to join the in-state defendant was indeed improper, unless that showing
> compels the dismissal of *all* defendants.   There is no improper joinder if the
> defendants' showing compels the same result for the resident and nonresident
> defendants, because this simply means that the plaintiff's case is ill founded as to
> all of the defendants.  Such a defense is more properly an attack on the merits of
> the claim, rather than an inquiry into the propriety of the joinder of the in-state
> defendant.

<u>Cuevas v. BAC Home Loans Servicing, LP</u>, 648 F.3d at 249 (emphasis in original)(citations omitted)(internal quotation marks omitted).  Based on the Tenth Circuit's history of relying on Fifth Circuit analysis in fraudulent joinder cases, the Tenth Circuit would likely approve this additional explanation of the fraudulent joinder standard.  Accordingly, the Court will use the following standard for fraudulent joinder: whether the defendant has demonstrated that there is no possibility that the plaintiff will recover against an in-state defendant.  <u>Cf.</u> <u>Zufelt v. Isuzu Motors Am., LCC</u>, 727 F. Supp. 2d at 1124-25 (concluding that fraudulent joinder occurs when "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined).  No case sets forth the burden of proof that applies to (much rarer) allegations of actual fraud, such as plaintiff-defendant collusion, <u>see</u> note 7, <u>supra</u>, at 17, and accompanying text, but the Court concludes that the clear-and-convincing standard -- the usual standard for fraud -- is appropriate, <u>see</u>, <u>e.g.</u>, <u>United States v. Thompson</u>, 279 F.2d 165, 167 (10th Cir. 1960)("An allegation of fraud is a serious matter; it is never presumed and must be proved by clear and convincing evidence."  (citations omitted)).

An unresolved question is whether fraudulent joinder permits the removal of actions that have been pending in state court for over a year.  Section 1446(c)(1) provides: "A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action . . . ."  28 U.S.C. § 1446(c)(1).  The two district court cases from the Tenth Circuit to address the issue both concluded that it does not, but those opinions were issued before Congress amended § 1446 in 2012 to add the remainder (the omitted portion) of the sentence quoted earlier in this paragraph: "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  <u>See</u> <u>Chidester v. Kaz, Inc.</u>, No. CIV 08-0776 TCK/PJC, 2009 WL

2588866, at *3 (N.D. Okla. Aug. 19, 2009)(Kern, J.); <u>Caudill v. Ford Motor Co.</u>, 271 F. Supp. 2d 1324, 1327 (N.D. Okla. 2003)(Eagan, J.).  Outside the Tenth Circuit, the Courts of Appeals have said little, and district courts appear more-or-less evenly split on the issue, with some holding that a case can be removed on the basis of fraudulent joinder after the one-year mark, <u>see</u> <u>Hardy v. Ajax Magnathermic Corp.</u>, 122 F. Supp. 2d 757, 759 (W.D. Ky. 2000); <u>Johnson v. Heublein, Inc.</u>, 982 F. Supp. 438, 444-45 (S.D. Miss. 1997); <u>Barnett v. Sylacauga Autoplex</u>, 973 F. Supp. 1358, 1367 (N.D. Ala. 1997); <u>Leslie v. BancTec Serv. Corp.</u>, 928 F. Supp. 341, 346 (S.D.N.Y. 1996); <u>Morrison v. Nat'l Ben. Life Ins. Co.</u>, 889 F. Supp. 945, 950-51 (S.D. Miss. 1995); <u>Saunders v. Wire Rope Corp.</u>, 777 F. Supp. 1281, 1282-83 (E.D. Va. 1991); <u>Greer v. Skilcraft</u>, 704 F. Supp. 1570, 1582-83 (N.D. Ala. 1989), and others concluding that the fraudulent-joinder doctrine bows to the one-year limitation, <u>see</u> <u>Ariel Land Owners, Inc. v. Dring</u>, 245 F. Supp. 2d 589, 600-02 (M.D. Pa. 2003); <u>Codner v. Am. Home Prods. Corp.</u>, 123 F. Supp. 2d 1272, 1274 (W.D. Okla. 2000); <u>Hattaway v. Engelhard Corp.</u>, 998 F. Supp. 1479, 1481-82 (M.D. Ga. 1998); <u>Russaw v. Voyager Life Ins. Co.</u>, 921 F. Supp. 723, 724-25 (M.D. Ala. 1996); <u>Zumas v. Owens-Corning Fiberglas Corp.</u>, 907 F. Supp. 131, 133-34 (D. Md. 1995); <u>Price v. Messer</u>, 872 F. Supp. 317 (S.D. W. Va. 1995); <u>Norman v. Sundance Spas, Inc.</u>, 844 F. Supp. 355, 356-57 (W.D. Ky. 1994); <u>Santiago v. Barre Nat'l, Inc.</u>, 795 F. Supp. 508, 510-12 (D. Mass. 1992); <u>Brock v. Syntex Labs., Inc.</u>, 791 F. Supp. 721, 722-23 (E.D. Tenn. 1992); <u>Cofer v. Horsehead Research & Dev. Co.</u>, 805 F. Supp. 541, 543-44 (E.D. Tenn. 1991); <u>O'Rourke v. Communique Telecomms., Inc.</u>, 715 F. Supp. 828, 829 (E.D. Mich. 1989).  Again, however, all of these cases came before the addition of 28 U.S.C. § 1446(c)(1), which grafted a bad-faith exception to the one-year limitation, discussed at length later in this opinion.  The Court concludes that the addition of the bad-faith exception to the one-year limitation clarifies that the one-year limitation is procedural,

rather than jurisdictional, and, thus, extends the applicability of fraudulent-joinder doctrine past the one-year mark.  Thus, defendants may remove a case on fraudulent-joinder grounds even after it has been pending in state court for more than one year.

Another unresolved question regarding fraudulent joinder is whether it creates an exception to the forum-defendant rule -- which provides that even an action with complete diversity cannot be removed if any defendant is a citizen of the forum state -- in addition to creating an exception to the rule of complete diversity.  See 28 U.S.C. § 1441(b)(2).  Courts and commentators recite fraudulent joinder as involving the legally unjustifiable naming of a nondiverse party, a party who defeats complete diversity, or a diversity-spoiling party, but no case addresses whether the doctrine extends to the wrongful naming of a diverse party whose inclusion in the lawsuit nonetheless defeats removal because of the party's status as a citizen of the forum state.  See Brazell v. Waite, 525 F. App'x at 884 & n.3 (implying, but not holding or stating clearly, that fraudulent joinder is an exception to the forum-defendant rule, and noting an "apparent lack of ruling from any federal appellate court, and [a] split among district courts, on the issue" (citing Morris v. Nuzzo, 718 F.3d 660, 666 (7th Cir. 2013))); Hernandez v. Cooper Tire & Rubber Co., No. CIV 12-1399 JWL, 2013 WL 141648, at *2 n.2 (D. Kan. Jan. 11, 2013)("Some courts have extended the fraudulent joinder doctrine to diverse, in-state defendants in light of the forum defendant rule . . . ."  (citing Morris v. Mid-Century Ins. Co., No. CIV 12-0578 SEB/DML, 2012 WL 3683540, at *5 (S.D. Ind. Aug. 24, 2012), vacated and remanded sub nom. Morris v. Nuzzo, 718 F.3d 660)).  Although the policy justifications behind fraudulent-joinder doctrine would seem to apply just as strongly to the forum-defendant rule as they do to complete diversity, there is an important legal distinction between the two requirements: complete diversity is a requirement of original subject-matter jurisdiction and is found in § 1332;

- 25 -

the forum-defendant rule is unique to removal jurisdiction -- it does not apply to cases filed in federal court in the first instance -- and is found in § 1441.   See 28 U.S.C. §§ 1332(a), 1441(b)(2).  Fraudulent joinder, however, only ever applies in the removal context, and does no work in cases filed in federal court in the first instance.  As such, the Court sees no principled reason to limit fraudulent-joinder doctrine's application to the joining of nondiverse parties to defeat complete diversity, while excluding the functionally identical practice of fraudulently joining forum-citizen defendants to defeat the forum-defendant rule.  The Court, therefore, construes fraudulent-joinder doctrine as permitting removal whenever a plaintiff fraudulently joins a party that defeats removal jurisdiction, whether that defeat comes by way of complete diversity or the forum-defendant rule.

A district court's order to remand based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, 28 U.S.C. § 1447(d) precluded the Tenth Circuit from reviewing the order).  The fraudulent joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

### 4.      Procedural Misjoinder.[8]

Rule 20 of the Federal Rules of Civil Procedure provides:

---

[8]The Court refers to the doctrine as "procedural misjoinder," rather than "fraudulent misjoinder," because of the confusion that the word "fraudulent" has caused in the fraudulent joinder context.  As the Honorable Martha A. Vasquez, then-Chief District Judge for the United States District Court for the District of New Mexico, once explained: "Fraudulent joinder is a term of art. It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."  Baeza v. Tibbetts, No. 06-0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006)(Vasquez, J.).   The Court will refer to the doctrine as "procedural misjoinder" to avoid expanding that confusion.  Flores-Duenas v. Briones, 2013 WL 6503537, at *22 n.8.

- 26 -

(a)   **Persons Who May Join or Be Joined.**

    (1)   **Plaintiffs.**  Persons may join in one action as plaintiffs if:

        (A)   they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        (B)   any question of law or fact common to all plaintiffs will arise in the action.

    (2)   **Defendants.**  Persons -- as well as a vessel, cargo, or other property subject to admiralty process in rem -- may be joined in one action as defendants if:

        (A)   any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

        (B)   any question of law or fact common to all defendants will arise in the action.

    (3)   **Extent of Relief.**  Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded.  The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities.

Fed. R. Civ. P. 20(a).

"Procedural misjoinder," also known as "fraudulent misjoinder," is a recent development that is related to fraudulent joinder, but distinct from it.  As Professor E. Farish Percy of the University of Mississippi School of Law has explained:

    Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the plaintiff has no reasonable procedural basis to join such defendants in one action.  While the traditional fraudulent joinder doctrine inquires into the substantive factual or legal basis for the plaintiff's claim against the jurisdictional spoiler, the fraudulent misjoinder doctrine inquires into the procedural basis for the plaintiff's joinder of

the spoiler.  Most state joinder rules are modeled after the federal joinder rule that authorizes permissive joinder of parties when the claims brought by or against them arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to a common question of law or fact.  Thus, in a case where the joined claims are totally unrelated, a federal district court may find removal jurisdiction pursuant to the fraudulent misjoinder doctrine even though the plaintiff has a reasonable substantive basis for the claim against the jurisdictional spoiler.

E. Farish Percy, <u>Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine</u>, 29

Harv. J.L. & Pub. Pol'y 569, 572 (2006)(footnotes omitted).

The Eleventh Circuit formulated the doctrine in <u>Tapscott v. MS Dealer Service Corp.</u>,

and explained its purpose as follows:

Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action.  A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."  <u>Wilson v. Republic Iron & Steel Co.</u>, 257 U.S. 92, 97 (1921).

<u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d at 1360 (footnote omitted).

The facts of <u>Tapscott v. MS Dealer Service Corp.</u> illustrate the doctrine's operation.  The case involved two putative state law class actions, joined together in a single case: (i) a class action in which an Alabama resident alleged that four defendants, including an Alabama resident, had violated various provisions of Alabama fraud and consumer-protection law in connection with the "sale of 'service contracts' on automobiles sold and financed in Alabama," 77 F.3d at 1355; and (ii) a class action in which Alabama alleged three defendants, including Lowe's Home Centers, a North Carolina resident, had violated Alabama consumer-protection law in connection with the sale of retail product, <u>see</u> 77 F.3d at 1355.  The second class action named Lowe's Home Centers as "the putative defendant class representative for a 'merchant' class."  77 F.3d at 1355.  This unified case matched particular plaintiffs "with particular defendants against whom they allege individual claims"; as relevant here, the only two class

representatives for the class action were Alabama residents, and they asserted claims only against Lowe's Home Centers.  77 F.3d at 1359-60.

The district court concluded that there was no allegation of joint liability or conspiracy, and that the claims involved in the car-sales class action were "wholly distinct from the alleged transactions involved in the" retail-products class action.  77 F.3d at 1360.  Rather, "[t]he only similarity between" the two classes was that they both alleged violations of Alabama statutory law; "[s]uch commonality on its face [was] insufficient for joinder."  77 F.3d at 1360.  The Eleventh Circuit agreed and explained:

> Although certain putative class representatives may have colorable claims against resident defendants in the putative "automobile" class, these resident defendants have no real connection with the controversy involving [the retail-products plaintiffs and] Lowe's in the putative "merchant" class action.  We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder.  We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.

77 F.3d at 1360.

The procedural misjoinder doctrine's reach outside the Eleventh Circuit is unclear.  The Tenth Circuit recently described the doctrine's status as follows: "It appears that the Fifth Circuit may also accept procedural misjoinder.  No circuit has rejected the doctrine, but the district courts and the commentators are split."  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739 (citing, for the proposition that the Fifth Circuit accepts the doctrine, Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d at 532-33; In re Benjamin Moore & Co., 309 F.3d 296, 298 (5th Cir. 2002)).  While the Tenth Circuit recognized that "[t]here may be many good reasons to adopt procedural misjoinder," it declined to adopt the doctrine, because it would not have changed the result in that case.  Lafalier v. State Farm Fire & Cas. Co., 391 F. App'x at 739.  See 14B Charles A. Wright & Arthur Miller, Federal Practice & Procedure § 3723, at 867-77 &

- 29 -

n.122 (3d ed. 2009)(confirming the developing doctrine's unclear status).  The Court, however, has adopted the doctrine and applied it in two cases, although it concluded in both cases that no procedural misjoinder occurred, and both cases thus resulted in remand.  See Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196 (D.N.M. 2013)(Browning, J.); Flores-Duenas v. Briones, 2013 WL 6503537.

### 5. The "Bad Faith" Exception to the One-Year Removal Bar for Diversity Cases.

Since 1988, 28 U.S.C. § 1446 has provided that no case that has been pending more than one year in state court can be removed on the basis of diversity jurisdiction.[9]  On January 6, 2012, Congress put into effect the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 125 Stat. 760, 762 ("JVCA"), which, among other changes, added a bad-faith exception to the one-year limitation.  As a result, the current subsection (c) is almost entirely new; it reads as follows, with the sole sentence of the statute that pre-exists the JVCA underlined:

---

[9]The one-year limitation applies only to standard diversity jurisdiction under 28 U.S.C. § 1332(a) and not to class actions removed under § 1332(d), which is a part of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4-14 ("CAFA").  Although exempting CAFA from the one-year limitation appears to defy the § 1446(c)(1)'s text, which refers to cases brought "on the basis of jurisdiction conferred by section 1332," another section of Title 28 clarifies the issue:

> A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants.

28 U.S.C. § 1453(b) (emphasis added).  See Reece v. Bank of N.Y. Mellon, 760 F.3d 771, 775-76 (8th Cir. 2014).

**Requirements; removal based on diversity of citizenship.** --

**(1)**     A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

**(2)**     If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that --

    **(A)**     the notice of removal may assert the amount in controversy if the initial pleading seeks --

        **(i)**     nonmonetary relief; or

        **(ii)**     a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

    **(B)**     removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).

**(3)**     **(A)**     If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3).[10]

---

[10]Subsection (b)(3) provides:

Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).     The combination of subsection (c)(3)(A)'s new provisions and subsection (b)(3)'s pre-JVCA provisions means that the defendant's thirty-day clock to remove a case starts whenever they have sufficient information -- obtained from anywhere in the case, and

> **(B)**   If the notice of removal is filed more than 1 year after commencement of the action and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1).

28 U.S.C. § 1446(c) (boldface in original)(underscoring added to show pre-JVCA content).

A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.[11]   It is clear how the Court should construe (ii) -- the Tenth Circuit's opinion in McPhail v. Deere & Co. has already fleshed out a detailed framework for analyzing the amount-in-controversy requirement, and the JVCA's legislative history indicates that, far from abrogating McPhail v. Deere & Co., Congress intended section 1446(c)'s amount-in-controversy provisions to codify the approach that the Seventh Circuit chartered in Meridian Securities Insurance Co. v. Sadowski and that the Tenth Circuit advanced in McPhail v. Deere & Co., see Report to the Committee on the Judiciary of the United States House of Representatives § 103, at

---

not merely from the pleadings or settlement communications -- to conclude that the case meets the amount-in-controversy requirement.

[11]As previously explained, it was unclear before the JVCA's passage whether the common-law doctrine of fraudulent joinder creates an exception to the forum-defendant rule or just to complete diversity.   See Law Regarding Removal, Remand, Fraudulent Joinder, Procedural Misjoinder, and Bad Faith Part 3, supra, at 47-49.   The bad-faith exception, however, is statutory, and the statute applies to all cases in which "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."   28 U.S.C. § 1446(c)(1).   The statute's plain meaning thus includes both the bad-faith joinder of a nondiverse party -- which defeats removal jurisdiction by defeating original diversity jurisdiction -- and the bad-faith joinder of a forum-citizen defendant -- which only defeats removal jurisdiction.   Moreover, as the Court is largely writing on a blank slate in interpreting the bad-faith exception, it sees no reason to read in a nonsensical double standard.

15-16, H.R. 112-10 (2011)(citing only two cases under the heading "Amount in controversy and removal timing," McPhail v. Deere & Co. and Meridian Securities Insurance Co. v. Sadowski, and stating that the JVCA's amendments "follow the lead of [those] cases" (emphasis omitted)).[12]  On the other hand, § 1446(c)'s text says nothing at all about (i), nor has any court

---

[12]The JVCA's legislative history provides:

Section 103(b)(3)(C) of the bill further amends subsection 1446(c) by inserting two new paragraphs, (2) and (3), to address issues relating to uncertainty of the amount in controversy when removal is sought, e.g., when state practice either does not require or permit the plaintiff to assert a sum claimed or allows the plaintiff to recover more than an amount asserted.  Although current practice allows defendants to claim that the jurisdictional amount is satisfied and remove, several issues complicate this practice.

First, circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied.  The ''sum claimed'' and ''legal certainty'' standards that govern the amount in controversy requirement when a plaintiff originally files in Federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it.  Second, many defendants faced with uncertainty regarding the amount in controversy remove immediately -- rather than waiting until future developments provide needed clarification -- out of a concern that waiting and removing later will result in the removal's being deemed untimely.  In these cases, Federal judges often have difficulty ascertaining the true amount in controversy, particularly when removal is sought before discovery occurs.  As a result, judicial resources may be wasted and the proceedings delayed when little or no objective information accompanies the notice to remove.

Proposed new paragraph 1446(c)(2) allows a defendant to assert an amount in controversy in the notice of removal if the initial pleading seeks non-monetary relief or a money judgment, in instances where the state practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.  The removal will succeed if the district court finds by a preponderance of the evidence that the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332(a), presently $75,000.

If the defendant lacks information with which to remove within the 30 days after the commencement of the action, the bill adds a new subparagraph 1446(c)(3)(A) to clarify that the defendant's right to take discovery in the state court can be used to help determine the amount in controversy.  If a statement

attempted to comprehensively define it.  The JVCA's legislative history gives the Court some

clue as to the exception's basic nature, but, in answering this question -- what constitutes "bad

---

appears in response to discovery or information appears in the record of the state proceedings indicating that the amount in controversy exceeds the threshold amount, then proposed subparagraph 1446(c)(3)(A) deems it to be an ''other paper'' within the meaning of paragraph 1446(b)(3), thereby triggering a 30-day period in which to remove the action.  The district court must still find by a preponderance of the evidence that the jurisdictional threshold has been met.

In adopting the preponderance standard, new paragraph 1446(c)(2) would follow the lead of recent cases.  See McPhail v. Deere & Co., 529 F.3d 947 (10th Cir. 2008); Meridian Security Ins. Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006). As those cases recognize, defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.  Discovery may be taken with regard to that question.  In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.  If the defendant establishes by a preponderance of the evidence that the amount exceeds $75,000, the defendant, as proponent of Federal jurisdiction, will have met the burden of establishing jurisdictional facts.

Under proposed subparagraph 1446(c)(3)(B), if the notice of removal is filed more than one year after the commencement of the action, and a finding is made that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding would be deemed bad faith under paragraph (1).

Section 103(b)(4)(A) of the bill inserts a heading for subsection 1446(d). Section 103(b)(4)(B) makes a technical amendment replacing ''thirty'' with ''30'' each place it appears in section 1446.  Section 103(b)(4)(C) strikes current subsection (e) (a criminal removal provision, which is now codified as part of new section 1454).  Section 103(b)(4)(D) redesignates current subsection (f) as new subsection (e), and inserts a new heading.

Report to the Committee on the Judiciary of the United States House of Representatives § 103, at 15, H.R. 112-10 (2011).

District courts in other Circuits may need to grapple with the extent to which the JVCA codifies the McPhail v. Deere & Co. approach.  The Court, however, is in the Tenth Circuit, and McPhail v. Deere & Co. binds it unless intervening statute or Supreme Court case law invalidates the holding.  The JVCA's legislative history makes it clear that McPhail v. Deere & Co. remains intact.

faith" vis-à-vis improperly joining, or keeping joined, nondiverse parties or forum-citizen defendants -- the Court will have to stake out its own definition.

In Aguayo v. AMCO Ins. Co., No. CIV 14-0400 JB/KBM, 2014 WL 5859098 (D.N.M. Oct. 31, 2014)(Browning, J.), the Court became the first federal court in the nation to comprehensively construe the new § 1446(c). The Court concluded that the bad-faith exception sets forth a two-step standard. First, the Court must inquire whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession which establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court. The defendant may introduce direct evidence of the plaintiff's bad faith at this stage -- e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal -- but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

## ANALYSIS

At the present time, the Court finds by a preponderance of the evidence that this case is completely diverse and that it has subject-matter jurisdiction, and it will, accordingly, deny the Motion to Remand. The Plaintiffs raise two separate arguments that this case is nondiverse: first, they contend that Saucedo is a New Mexico citizen, and not a Mexican citizen as he initially

appeared to be, thus making his citizenship the same as that of the Plaintiffs; second, they argue that McDaniel is both a Plaintiff and a Defendant in this case, and that, as a Defendant, his New Mexico citizenship is nondiverse from Cowan's New Mexico citizenship, and the case is, thus, nondiverse. Neither of these arguments avails, and the Court will address them in sequence.

The relevant standard applicable to both questions is essentially equivalent to that governing a rule 12(b)(1) motion: the Court must look beyond the pleadings and find, by a preponderance of the evidence, the facts that go to establishing or destroying its jurisdiction. See, e.g., McPhail v. Deere & Co., 529 F.3d at 953 (10th Cir. 2008). The Court first notes, that, even if the rule 12(b)(6) standard applied -- i.e., even if the Court were required to accept the Complaint's factual allegations as true -- the Plaintiff's argument on this front would still fail. The Complaint alleges that Saucedo is a Mexican citizen. See Complaint ¶ 6, at 2 ("Saucedo is a resident of Juarez, Mexico."). Looking at the available facts, the Court agrees with the Defendants -- and with the Complaint -- that the preponderance of the evidence indicates that Saucedo is a Mexican citizen and not a citizen of New Mexico. Saucedo has a Mexico driver's license, apparently no social security number, and listed a Juarez, Mexico, address on the accident report that he filled out immediately following the crash. See Accident Reports at 1, filed August 15, 2014 (Doc. 21-1). He is also apparently not registered to vote in New Mexico -- a fact that does not really tell the Court much. See Assessor's Office Search and Secretary of State Search at 6-9. The one piece of evidence tending to suggest that Saucedo might be a New Mexico citizen -- that he was served at an address in Anthony -- is undercut by two additional pieces of evidence that Red Rock brings forth: (i) Saucedo does not own the home at which the service was made, see Assessor's Office Search and Secretary of State Search at 1-5; and (ii) a subsequent attempt to reach him at that address was returned to Red Rock as undeliverable, see

Tr. at 23:7-11 (Thomas).  The Court thus finds, based on the available evidence, that Saucedo is a Mexican citizen.  The Plaintiffs may raise this issue again in the future if they develop additional evidence tending to demonstrate that Saucedo is a New Mexico citizen.

As to the Plaintiffs' second argument -- that McDaniel's presence in this case as a Defendant destroys diversity -- the Court disagrees on two grounds, one of which is easily fixable by amendment and the other of which is less easy to fix.  First, there is, at present, no claim asserted against McDaniel.  McDaniel's name is listed in the caption as a Defendant, and the Complaint states that he "is a properly named defendant in this action," but making a bald proclamation like this one does not make it so.  Complaint ¶ 27, at 3.  The Complaint also states that "Cowan alleges no specific claims against Defendant McDaniel, because Plaintiff Cowan does not believe Defendant McDaniel was negligent," and that "Cowan may ultimately have colorable claims for negligence against Defendant McDaniel."  Complaint ¶¶ 23, 26, at 3 (emphasis added).  Diversity, however, is determined at the point of filing or removal, and is based upon the existence of actual claims -- not merely the potential for them.  See 13E Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, Federal Practice and Procedure § 3608 (3d ed. 2014).  "[T]he joinder of a resident defendant against whom no cause of action is pled, or against whom there is in fact no cause of action, will not defeat removal."  Roe v. Gen. Am. Life Ins. Co., 712 F.2d at 452 n.* (citing Dodd v. Fawcett Publ'ns, Inc., 329 F.2d 82 (10th Cir. 1964)("The joinder of a resident defendant against whom no cause of action is stated is patent sham."  329 F.2d at 85)).  Thus, the supposed adversity between Cowan and McDaniel does not destroy diversity, because, under the current Complaint, no claim exists between the two.  The Plaintiffs have a pending motion to amend their Complaint to add a claim against

McDaniel, and the Court intimates no view at this time on the likelihood of that motion's success.  See Motion to Amend Complaint, filed December 10, 2014 (Doc. 29)("Motion to Amend").

The second, more fundamental reason that diversity exists in spite of McDaniel's supposed status as a Defendant -- a reason that cannot be as easily undone by amending the Complaint to add a claim against McDaniel -- is that cross-claims do not defeat diversity.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 380-81 (1978)("Owen")(White, J., dissenting, joined by Brennan, J.).  As Cowan and McDaniel are both Plaintiffs -- a fact that neither Plaintiff denies[13] -- any claims between them are cross-claims under rule 13(g).  See Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty . . . .").  Although cross-claims are more commonly seen between defendants, a claim by a plaintiff against another plaintiff is also a cross-claim.[14]   See, e.g., Ryan ex rel. Ryan v.

---

[13]It is perhaps more accurate to say that the attorney who represents both Plaintiffs, Mr. Thompson, does not deny that both Cowan and McDaniel are Plaintiffs.

[14]The Plaintiffs attempt to avoid this result by taking a cue from Rodriguez v. Marchman and labeling McDaniel a "plaintiff-defendant."  With all due respect to Judge Herrera, the Court does not believe there is any such thing.  The plaintiff is the master of his or her complaint, and if a plaintiff takes on a co-plaintiff, and one co-plaintiff later brings claims against the other, these claims are plaintiff-on-plaintiff cross-claims.  If, alternatively, the plaintiff does not take on a co-plaintiff, but rather names this party as a defendant -- among other defendants -- and asserts claims against him or her, and, later on, this party asserts claims against other defendants, these claims are defendant-on-defendant cross-claims.   Conceptualizing this system in any other way -- and countenancing the concept of a plaintiff-defendant -- logically serves only one purpose that conceptualizing these claims as cross-claims does not serve: facilitating self-suing.  As the federal courts bar self-suing, the Plaintiffs' creative theory must yield to the Court's more parsimonious one.  See BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 949 F. Supp. 2d 486 (S.D.N.Y. 2013)(Sweet, J.)(referencing an "established rule that a party may not generally bring claims against itself" (citing Globe & Rutgers Fire Ins. Co. v. Hines, 273 F. 774, 777 (2d Cir. 1921)).  When a party has a dispute with itself, there is no constitutional case or controversy for the federal courts to resolve.  See U.S. Const. art. III, § 2, cl. 1.

The Plaintiffs' theory does not seem outrageous here, because McDaniel, as a purported plaintiff-defendant, is nondiverse from Cowan, a pure plaintiff.  Under their theory, however,

Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819 (8th Cir. 2001)("The district court correctly allowed the plaintiffs to amend their complaint to assert their claims against Harvey Ryan as cross-claims against a co-plaintiff rather than as claims against a defendant.").

Cross-claims are like third-party impleader claims in that they are swept under the Court's supplemental jurisdiction even if they, themselves, are nondiverse. If the law were otherwise, and if cross-claims or third-party impleader claims defeated jurisdiction, then parties could artfully plead claims to defeat diversity jurisdiction whenever two or more nondiverse parties exist on the same side of a case. This construction would effectively broaden the already stringent requirement of complete diversity -- meaning that every plaintiff must be diverse from every defendant -- into a requirement of super-diversity -- meaning that every party must be diverse from every other party.[15] Moreover, it would also allow defendants to implead a nondiverse third-party defendant to destroy diversity at will.

---

McDaniel could conceivably destroy diversity with himself. Consider a case where co-plaintiffs *X* and *Y* assert claims against defendant *Z*, and the parties are from California, Utah, and Texas, respectively. Under the Plaintiffs' theory, *X* could assert claims against *Y*, designate *Y* a plaintiff-defendant, and *Y* could argue that the case is nondiverse, because there are Utah residents on both sides of the "v." in the case -- even though *Y* is both parties. Less far-fetched than that theory, if McDaniel is a defendant as well as a plaintiff, then the Plaintiffs should be able to argue that removal is improper under the forum-defendant rule or because he refused to consent to removal. The Court appreciates the Plaintiffs' novel argument and their ability to find case law supporting their position, but it refuses to recognize the concept of a plaintiff-defendant.

[15]For example, if a plaintiff from state *A* asserts claims against five defendants from states *B*, *C*, *D*, *D*, and *E*, respectively, then either of the two defendants from state *D* could assert a cross-claim against the other and defeat diversity. Cowan and McDaniel are essentially using this same trick, just from the plaintiffs' side.

It is true that, in the above example, the two defendants from state *D* would have to have some factual basis giving rise to a cross-claim, but it would be difficult for courts to enforce this requirement. Because the two defendants presumably share an interest in destroying diversity, the plaintiff would be tasked with uncovering the frivolous or collusive nature of a claim to which he or she is not a party. The federal court hearing the case -- which seeks to resolve jurisdictional disputes as quickly and as early as possible in the case -- would be in a difficult and novel position. Any claim by the plaintiff that the diversity-destroying cross-claim is frivolous

The Supreme Court foreclosed this construction of the complete-diversity requirement in

Owen, the seminal case on ancillary jurisdiction in diversity cases:

> The complete-diversity requirement, of course, could be viewed as meaning that in a diversity case, a federal district court may adjudicate only those claims that are between parties of different States.  Thus, in order for a defendant to implead a third-party defendant, there would have to be diversity of citizenship; the same would also be true for cross-claims between defendants and for a third-party defendant's claim against a plaintiff.  Even the majority, however, refuses to read the complete-diversity requirement so broadly; it recognizes with seeming approval the exercise of ancillary jurisdiction over nonfederal claims in situations involving impleader, cross-claims, and counterclaims.

Owen, 437 U.S. at 380-81.[16]

At least two Courts of Appeals and one district court under the United States Court of

Appeals for the Tenth Circuit's aegis has concluded that "[c]ross-claims pursuant to Fed.R.Civ.P.

13(g) by co-defendants against a party that does not have diversity does not destroy diversity

jurisdiction under ancillary jurisdiction of the court."  Trinity Universal Ins. Co. of Kan., Inc. v.

D.R. Horton, Inc., No. CIV 07-0600 PAB, 2009 WL 1010548, at *3 (D. Colo. Apr. 2,

2009)(Brimmer, J.).  See Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819

(8th Cir. 2001)("The addition of the cross-claim did not defeat diversity jurisdiction"); Scott v.

---

or collusive would presumably be analyzed as fraudulent joinder.  Fraudulent joinder is already an extremely high standard for its proponents to surmount, despite that, in typical fraudulent joinder claims, the two parties to the allegedly fraudulent claim -- a plaintiff and a defendant -- are both adverse with respect to the claim and, typically, adverse with respect to the judicial forum in which they desire to litigate -- with the plaintiff typically desiring state court and the defendant typically desiring federal court.  See Aguayo v. AMCO Ins. Co., No. CIV 14-0400 JB/KBM, 2014 WL 5859098, at *40 n.18 (D.N.M. Oct. 31, 2014)(Browning, J.)(outlining the reasons for plaintiffs' preference for state court and defendants' preference for federal court).

[16]Although this passage was written in dissent, it describes the majority's position -- articulated in less clean terms -- and uses it to argue for a more expansive view of diversity jurisdiction, in other respects, than the one that the Owen majority ultimately adopted.  See Owen, 437 U.S. at 2403 & n.18 (Stewart, J.)("It is true, as the Court of Appeals noted, that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims, or counterclaims.").

Fancher, 369 F.2d 842, 844 (5th Cir. 1966)("We also reject Scott's contention that Short's cross-claim against Scott was not ancillary to the original suit and therefore required an independent jurisdictional base. . . .  In such case jurisdiction rests with the primary suit.").

The Court thus concludes that a claim by Cowan against McDaniel -- even if one existed, which, for the time being, is not the case -- would be a cross-claim, and would not defeat the Court's diversity jurisdiction, even though both Cowan and McDaniel are New Mexico citizens. Cowan could have crafted the Complaint with herself as the lone Plaintiff, and McDaniel as a pure Defendant, and there would have been no complete diversity.  McDaniel could then assert cross-claims against Saucedo, Loya, and Red Rock, all without creating complete diversity.  The Complaint, however, did not take that approach.  Furthermore, the presently outstanding Motion to Amend does not appear to change McDaniel's status to that of a pure Defendant -- it simply asserts a claim by Cowan against McDaniel[17] -- so the Court would not remand this case even if it granted the Motion to Amend.  Even if Cowan were to fashion a new motion to amend, in which she named McDaniel as a Defendant only, the Court would subject such a motion to serious scrutiny.  In Ryan ex rel. Ryan v. Schneider National Carriers, Inc., the United States Court of Appeals for the Eighth Circuit upheld a district court's decision to allow a plaintiff to

---

[17]It is difficult to tell whether the Motion to Amend seeks to convert McDaniel into a pure Defendant, as (i) the motion's drafter does not explicitly say that McDaniel is being dropped as a Plaintiff, which is something one would expect to see explained if it were the case; (ii) the caption continues to list McDaniel as both a Plaintiff and a Defendant; but (iii) all references to McDaniel as a "Plaintiff" appear to have been omitted from the proposed amended Complaint.  At the hearing on the Motion to Amend, the Plaintiffs' lawyer clarified that McDaniel still intended to assert claims as a Plaintiff.  See Transcript of Hearing at 2:13-3:1 (taken December 30, 2014)(Court, Thompson)("THE COURT:  . . . . Is Terry McDaniel still a plaintiff? . . . .  MR. THOMPSON:  . . . . [H]e is still a plaintiff, yes. . . .  THE COURT:  . . . So he's bringing all the same claims against the defendants that Ms. Cowan is[?]  . . . MR. THOMPSON:  That's correct, Your Honor.  He stands on his original complaint.").

amend his complaint to assert new cross-claims against a co-plaintiff, while refusing to allow the

plaintiff to transform the co-plaintiff into a defendant:

> The district court correctly allowed the plaintiffs to amend their complaint to assert their claims against Harvey Ryan as cross-claims against a co-plaintiff rather than as claims against a defendant.  In deciding whether to grant leave to amend, courts must balance the defendant's interest in retaining the federal forum with the plaintiff's competing interest in avoiding parallel federal and state litigation.  Courts consider whether the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has delayed in requesting amendment, whether the plaintiff will be significantly injured if amendment is refused, and any other factors bearing on the equities.  Mayes v. Rapoport, 198 F.3d 457, 462 (4th Cir. 1999).  Here, it appears the plaintiffs' main reason for adding Harvey Ryan as a defendant, rather than filing a cross-claim against him, was to destroy diversity jurisdiction.  More importantly, allowing the plaintiffs to assert a cross-claim against Harvey Ryan gave them the same protection they sought by asserting a claim against him as a defendant, so the plaintiffs suffer no injury from the district court's solution.  Although the plaintiffs have an interest in protecting themselves if Harvey Ryan is found liable for their injuries, the proper means for protecting their interest is the filing of a cross-claim against their co-plaintiff under Federal Rule of Civil Procedure 13(g).  Williams v. Carmean, No. Civ.A. 99-1095, 1999 WL 717645, at *2 (E.D. La. Sept. 13, 1999).  The cross-claim meets the requirements of Rule 13(g) because it is "by one party against a co-party arising out of the transaction or occurrence [here, the automobile accident] that is the subject matter . . . of the original action."  The addition of the cross-claim did not defeat diversity jurisdiction.  Williams v. Carmean, 1999 WL 717645, at *2.  On the other hand, if the district court had allowed the claims against Harvey Ryan as a defendant, complete diversity would have been destroyed, and the district court would have had to either deny joinder or permit joinder and remand the action to state court.  28 U.S.C. § 1447(e).  See Cobb v. Delta Exports, Inc., 186 F.3d 675, 677 (5th Cir. 1999); ARE Sikeston Ltd. v. Weslock Nat'l, Inc., 120 F.3d 820, 833 (8th Cir. 1997).

> The district court had supplemental jurisdiction over the claim against Harvey Ryan by the other plaintiffs.  Williams v. Carmean, 1999 WL 717645, at *2.  District courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," 28 U.S.C. § 1367(a), except when original jurisdiction is based solely on diversity of citizenship, district courts "shall not have supplemental jurisdiction . . . over claims by plaintiffs against persons made parties under Rule 14 [impleader], 19 [compulsory joinder], 20 [permissive joinder], or 24 [intervention] of the Federal Rules of Civil Procedure, . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332," 28 U.S.C. § 1367(b).  Here, the plaintiffs' claim against Harvey Ryan was part of the same case or controversy as

the original claims, and Harvey Ryan was not made a party by the other plaintiffs under any of the Rules specified in § 1367(b).

Ryan ex rel. Ryan v. Schneider National Carriers, Inc., 263 F.3d at 819-20 (alterations in original).

This case presents essentially the same issue as the Eighth Circuit's, and, if Cowan and McDaniel, at some later date, file a motion seeking to part ways as co-Plaintiffs and convert McDaniel into a pure Defendant, then they will be tasked with wrestling with Ryan ex rel. Ryan v. Schneider National Carriers, Inc.  They may need to show either that the claim between Cowan and McDaniel -- if one is ever alleged -- must, for some reason other than forum manipulation, exist as a true claim and not a cross-claim, or else that the loss of a federal forum will not prejudice the Defendants.

The Court will not speculate on the outcome of the Motion to Amend, let alone some theoretical motion that has yet to be filed.  It notes, however, two things.  First, it appears unlikely that, even if the Court granted the Motion to Amend, remand to state court would follow.  Second, even if the Motion to Amend had asked the Court to reclassify McDaniel as a pure Defendant, thus destroying diversity -- and the Motion to Amend does not request such an amendment -- the Court would entertain a request to grant the relief that the actual, filed Motion to Amend requests: the assertion of a cross-claim between co-Plaintiffs Cowan and McDaniel.

**IT IS ORDERED** that the Motion to Remand to State Court, filed August 15, 2014 (Doc. 20), is denied without prejudice to the Plaintiffs renewing the motion at a later date.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Bruce E. Thompson
Martinez, Hart & Thompson, P.C.
Albuquerque, New Mexico

 *Attorneys for the Plaintiffs and Plaintiff-Defendant Terry McDaniel*

Colbert N. Coldwell
Guevara, Bauman, Coldwell & Reedman, LLP
El Paso, Texas

 *Attorneys for Defendant Francisco Javier Mendez Loya*

Armando Gaytan Saucedo
Anthony, New Mexico

 *Defendant pro se*

Seth Sparks
Krystle A. Thomas
Shannon Sharrell
Rodey, Dickson, Sloan, Akin & Robb, PA
Albuquerque, New Mexico

 *Attorneys for Defendant Red Rock Risk Retention Group, Inc.*